**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Charles Richard TEDFORD,
Defendant–Appellant.**

**No. 88–1803.**

United States Court of Appeals,
Fifth Circuit.

June 2, 1989.

Jesse Carrillo, Austin, Tex., for defendant-appellant.

Dan Mills, Asst. U.S. Atty., Austin, Tex., LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for defendant-appellee.

Before ALDISERT,* REAVLEY, and HIGGINBOTHAM, Circuit Judges.

* Circuit Judge of the Third Circuit, sitting by designation.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Charles Richard Tedford, a former police officer with the Texas Capitol Police Department, was convicted on two counts of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). He appeals the trial court's refusal to suppress firearms seized during a search of a rented storage unit. Tedford alleges that the search was tainted by a prior nighttime search of his residence pursuant to a warrant issued without probable cause and without specific authorization to search at night as required by Fed.R.Crim.P. 41(c). He further denies that his consent to search the storage space was voluntary. We agree with the trial court that the officers relied in "good faith" upon the validity of the warrant to search Tedford's residence. We are persuaded that the search of Tedford's residence violated Rule 41(c), but we refuse on that ground to suppress the firearms seized during the later search of the storage unit. We also conclude that the trial court's finding of consent to search the storage unit was not clearly erroneous.

I

Federal and state officers participated in a joint investigation of Tedford. Deciding to seek a search warrant for his residence, they presented the affidavit of Harold O'Brien, a narcotics officer with the Texas Department of Public Safety to Texas State District Judge Jon Wisser. At approximately 11:00 p.m. on February 3, 1988, Judge Wisser authorized the search of Tedford's residence. Federal and state officers executed the search warrant at approximately 11:55 p.m. that evening. The search lasted approximately two hours, during which time Tedford was arrested for possession of a controlled substance.[1] Officers later confronted Tedford with a receipt for storage space seized during the search of his residence. Tedford signed a form consenting to a search of the storage unit. During this latter search, officers

1. The drug charge was brought in state court and is not at issue in this appeal.

found a Russian sub-machine gun and a short-barreled shotgun.

The seized weapons led to Tedford's indictment on two counts of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Tedford moved to suppress the firearms. The district court denied the motion after an evidentiary hearing, finding the search of Tedford's residence lawful and Tedford's consent to the search of his storage unit voluntary. Tedford entered a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), preserving his right to appeal the denial of his motion to suppress.

## II

Tedford contends here that the trial court erred by refusing to suppress the firearms because (1) the state search warrant for his residence was not supported by probable cause; (2) the "good faith" exception to the exclusionary rule did not apply; (3) the nighttime search of his residence violated Fed.R.Crim.P. 41(c); and (4) his consent to search the storage unit was not voluntary.

## A. LEGALITY OF RESIDENTIAL SEARCH

■ When federal officers participated in the joint search of Tedford's residence it became a "federal search" subject to the constraints of federal law. *See, e.g., United States v. Comstock*, 805 F.2d 1194, 1200–1205 (5th Cir.1986) (Rule 41 applicable to state search warrant executed by both state and federal officers), *cert. denied*, 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 513 (1987); *United States v. Hanson*, 469 F.2d 1375, 1377 (5th Cir.1972) ("if a federal agent is invited to participate in a joint search with state officers, the legality of the search and the admissibility of the evidence seized in the search must be tested, in a federal prosecution, as if the search were exclusively federal") (citing *Byars v. United States*, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520 (1927); *Lustig v. United States*, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949)). We therefore look to federal law to determine the legality of this search.

### 1. *Good Faith*

Tedford first argues that the search of his residence was unlawful because the search warrant was not supported by probable cause. He also contends that the "good faith" exception to the exclusionary rule adopted in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), does not apply because the officers did not rely in "good faith" upon that warrant. We decide the Fourth Amendment probable cause issue before considering the officers' "good faith" if its resolution would provide important guidance on Fourth Amendment limitations. *United States v. Harper*, 802 F.2d 115, 119 (5th Cir.1986) (citing *Leon*, 104 S.Ct. at 3422); *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986). Tedford contends only that the underlying affidavits failed to provide sufficient factual support to establish probable cause for the warrant. Because this claim would be answered by well-settled Fourth Amendment principles, we proceed directly to the issue of "good faith."

■ The trial court determined that "the officers who executed the search warrant at [Tedford's] place of residence acted in objectively reasonable reliance upon a search warrant issued by Judge Wisser, whom the Court finds to be a detached and neutral Judge." We accept the facts underlying the trial court's finding of good faith unless they are clearly erroneous. However, the court's ultimate determination that the officers acted in "good faith" is a conclusion of law subject to de novo review. *United States v. Breckenridge*, 782 F.2d 1317, 1321 (5th Cir.1986), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986); *Maggitt*, 778 F.2d at 1035.

■ In *Leon*, the Supreme Court held that the exclusionary rule did not apply to evidence discovered by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral

magistrate, even though the warrant was later found to be unsupported by probable cause as required by the Fourth Amendment. *Leon,* 104 S.Ct. at 3409, 3421–23. The Court reasoned that suppressing evidence obtained by officers acting in "good faith" would not effectuate the exclusionary rule's primary function of deterring police misconduct. *Id.* at 3419–20. Exclusion of evidence remains an appropriate remedy if:

1. the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
2. the magistrate abandoned his judicial role and failed to perform his neutral and detached function;
3. the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
4. the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Breckenridge,* 782 F.2d at 1320–21 (citing *Leon,* 104 S.Ct. at 3421–22; *Maggitt,* 778 F.2d at 1034).

Tedford argues that the "good faith" exception does not apply on two grounds. First, he contends that Judge Wisser abandoned his detached and neutral role by merely ratifying the officers' conclusions and issuing the warrant on the basis of "bare bones" affidavits. *See Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979) (suppression appropriate where magistrate abandons judicial role). Second, he claims that the officers' reliance on the warrant was unreasonable because the underlying affidavits were completely "lacking in indicia of probable cause." *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (suppression appropriate where search warrant affidavit so lacking that official belief that probable cause exists is entirely unreasonable). We find the affidavits adequate to reject both contentions.

The primary affidavit was submitted by Officer O'Brien, a state narcotics investigator with twenty-one years experience in law enforcement. According to the affidavit, the day before O'Brien sought the warrant ATF Agent Littleton told O'Brien that he had spoken with an informant who had provided reliable information in the past leading to the arrest of several people for narcotics trafficking. Ten days earlier, this informant told Littleton that he had personal knowledge that Tedford was attempting to set up a methamphetamine lab for an individual in Austin. One of Tedford's fellow officers told O'Brien that Tedford last appeared for work on January 5, 1988, and would not return until February 5, 1988 due to intervening holidays and sick leave.

O'Brien's affidavit also described various methamphetamine investigations and "speed lab busts" during the two years prior to Tedford's arrest in which Tedford was either observed at the scene or his personal property was found there. In one instance, a person arrested for possession of methamphetamine claimed that Tedford owned the machine gun and had manufactured the three silencers seized during the search of his home. Tedford later contacted O'Brien and confirmed that three handguns found during the search were his and that they were being held as collateral for a loan. An officer later informed O'Brien that Tedford's binoculars had been found at the scene of another arrest for possession of methamphetamine. In another instance, an officer observed Tedford at the scene of a "speed lab bust," even though he had no part in the investigation and should not have known the arrest was imminent. The affidavit also contained information from police officers who observed Tedford at various times in the company of suspected methamphetamine dealers.

An affidavit by Tim Angermann, Lampasas County Deputy Sheriff, was attached and incorporated by reference in O'Brien's affidavit. Angermann explained that just a few weeks earlier he had arrested an individual for aggravated possession of methamphetamine. Angermann stated that the person immediately called Tedford's residence, and that Tedford partici-

pated in arranging his bail. The affidavit also contained information from two confidential informants who had previously provided reliable information concerning narcotics transactions. One informant told Angermann that a few weeks earlier he had witnessed a methamphetamine sale at the residence of "Charlie, an Austin Policeman." The other informant related that he had witnessed two to four pounds of marijuana and a large quantity of methamphetamine being packaged at the Austin residence of a policeman named "Charlie." Both informants provided directions to the residence and a phone number, which O'Brien later verified as belonging to Tedford.

These are not "bare bones" affidavits. It was reasonable for Judge Wisser and the police officers to conclude that the affidavits had sufficient factual detail to establish probable cause to search Tedford's residence. We therefore affirm the district court's conclusion that the officers relied in "good faith" upon the state search warrant for Tedford's residence.

### 2. Nighttime Search

Tedford next argues that the firearms seized from his storage unit should have been suppressed because the search of his residence at night violated Fed.R.Crim.P. 41(c). We agree that the rule was violated, but are not persuaded that evidence from the subsequent search should have been suppressed.

■ Rule 41(c)(1) provides, in pertinent part, that "the warrant shall be served in the daytime unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." [2] The trial court found that the rule had not been violated because there was reasonable cause for the nighttime search of Tedford's residence.[3] Rule 41, however,

requires the issuing authority to make that determination. Judge Wisser made no such finding and did not specifically authorize a nighttime search. The unauthorized nighttime search violated Rule 41(c)(1). See United States v. $22,287, 709 F.2d 442, 447–49 (6th Cir.1983) (Rule 41 violation where warrant failed to authorize and affidavit did not show cause for nighttime search, even though known facts supported); United States v. Searp, 586 F.2d 1117 (6th Cir.1978) (Rule 41 violation where state search warrant did not authorize, and underlying affidavit contained no facts to justify, nighttime search by state and federal officers), cert. denied, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979); United States v. Ravich, 421 F.2d 1196, 1200–02 (2d Cir.1970) (Rule 41 violation where warrant did not authorize nighttime search), cert. denied, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970).

Insofar as Tedford relies on this violation to suppress evidence obtained during a subsequent search, he must invoke the derivative evidence rule. The derivative evidence rule, also known as the "fruit of the poisonous tree doctrine," requires exclusion of evidence that is the indirect product or "fruit" of unlawful police conduct. See Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) (extending exclusionary rule beyond illegally obtained evidence to other incriminating evidence derived therefrom); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (extending exclusionary rule to evidence that is indirect product or "fruit" of illegality). Although these cases involve Fourth Amendment violations, the Supreme Court has also applied the derivative evidence rule where Fifth or Sixth Amendment violations have occurred. See Nix v. Williams, 467 U.S. 431, 442, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984) (citing United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926,

---

**2.** The rule defines "daytime" to mean the hours between 6:00 a.m. and 10:00 p.m. Fed.R.Crim.P. 41(h).

**3.** Officer O'Brien testified that, during surveillance, officers observed Tedford return to his residence late the evening of the search for the

first time in several days. O'Brien stated that a nighttime search was warranted by the fact that he and other investigating narcotics agents felt it necessary to conduct the search in Tedford's presence.

18 L.Ed.2d 1149 (1967) (derivative evidence rule applied where Sixth Amendment violated) and *Murphy v. Waterfront Comm of New York Harbor,* 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964) (derivative evidence rule applied where Fifth Amendment violated)). The "fruit of the poisonous tree doctrine" is not triggered, however, by a rule violation that does not rise to constitutional proportions.

The Supreme Court has distinguished violations of *Miranda's* "prophylactic" procedures from Fifth Amendment violations, concluding that a mere departure from *Miranda* does not require exclusion of derivative evidence. *See, e.g., Oregon v. Elstad,* 470 U.S. 298, 305–309, 105 S.Ct. 1285, 1291–93, 84 L.Ed.2d 222 (1985) (absent some Fifth Amendment violation, confession obtained in violation of *Miranda* does not require exclusion of subsequent confession); *Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974) (where Fifth Amendment not violated, confession obtained prior to full *Miranda* warnings does not require court to suppress testimony of witness identified during that confession). Similarly, we have held that a violation of *Miranda's* "prophylactic" rule is insufficient to trigger the "fruit of the poisonous tree doctrine." *United States v. Barte,* 868 F.2d 773, 774 (5th Cir.1989) ("[t]he derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion") (*citing United States v. Bengivenga,* 845 F.2d 593, 601 (5th Cir.1988) (en banc), *cert. denied,* ― U.S. ―, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988)); *United States v. Cherry,* 759 F.2d 1196, 1209–10 & n. 10 (5th Cir.1985) (Supreme Court's decision in *Oregon v. Elstad* supersedes prior holdings that *Miranda* requires suppression of derivative physical evidence), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1986).

■ We believe this reasoning applies with equal force to violations of Rule 41. A violation of Rule 41(c) alone does not trigger the derivative evidence rule. Of course, Tedford might be able to rely on the "fruit of the poisonous tree doctrine" if he established that the officers violated his Fourth Amendment rights. However, Tedford does not contend that the nighttime search violated the Constitution.[4] We therefore refuse to address the issue and find the derivative evidence rule inapplicable.

### B. CONSENT TO SEARCH STORAGE UNIT

■ Finally, Tedford argues that the trial court erred by finding that he voluntarily consented to the search of his storage unit. A trial court's finding of consent will not be overturned unless clearly erroneous. *United States v. Chenault,* 844 F.2d 1124, 1128–29 (5th Cir.1988); *United States v. Hanson,* 801 F.2d 757, 760 n. 3 (5th Cir.1986). Consent to search must be given knowingly and voluntarily under the "totality of the circumstances." *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878, 64 L.Ed.2d 497 (1980); *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). We have outlined six primary factors to consider in making this determination: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Galberth,* 846 F.2d 983, 987 (5th Cir. 1988), *cert. denied,* ― U.S. ―, 109 S.Ct. 167, 102 L.Ed.2d 137 (1988). All of these

---

**4.** In *Gooding v. United States,* 416 U.S. 430, 94 S.Ct. 1780, 40 L.Ed.2d 250 (1974), three Justices, dissenting from a majority opinion decided on non-constitutional grounds, declared that the principle that nighttime searches "involve a greater intrusion than ordinary searches and therefore require a greater justification ... may well be a constitutional imperative." *Id.* at 464, 94 S.Ct. at 1797. They noted that "it is by now established Fourth Amendment doctrine that increasingly severe standards of probable cause are necessary to justify increasingly intrusive searches." *Id.*

factors are relevant, but none of the six is dispositive. *Id.*

Tedford argues that he executed the search form while the officers were searching his residence. He contends that he was intimidated by the fact that twelve officers entered his home late at night with guns drawn, that he was cold because the officers left his front door open and would not allow him to put on a shirt, and that he was told to sign the consent form or he would have to wait until a search warrant was obtained. Tedford's testimony conflicted with that of Officers O'Brien and Littleton. Not only did they dispute the circumstances surrounding the nighttime search of Tedford's residence, they both testified that Tedford signed the consent form at a DPS office after his arrest and after *Miranda* warnings had been given. Both stated that they seated Tedford in a conference room, with one arm handcuffed to a chair, and gave him some coffee. They denied that he was coerced into signing the consent form, stating that he was in the company of fellow officers and that he was very cooperative, giving them keys and detailed directions to his storage unit.

The trial court found the officers' testimony more credible. Our review of the record gives us no reason to believe these findings were clearly erroneous. *United States v. Rodriguez*, 835 F.2d 1090 (5th Cir.1988). Tedford produces no evidence of threats of force while at the DPS. The evidence indicates that he signed the consent form in the presence of his fellow officers. His familiarity with his relevant legal rights is evident from his twenty-one years of experience in law enforcement. The trial court's finding of a valid consent was not clearly erroneous.

AFFIRMED.