**UNITED STATES of America,**

v.

**Bruce Wayne CAMPBELL.**

**Cr. No. A–91–CR–27.**

United States District Court,
W.D. Texas,
Austin Division.

Nov. 12, 1992.

Gregg Lehman, U.S. Attorney's Office, Austin, Tex., for plaintiff.

Christopher Gunter and Alan Albright, Austin, Tex., for defendant.

## ORDER

NOWLIN, District Judge.

Before the Court are two motions to suppress filed by Defendant Bruce Wayne Campbell. On November 9, 1992, this Court held a hearing to consider these motions as well as the other pending motions in this action. The Court ruled on all of the motions at the hearing, except for portions of the motion to suppress statements filed by the Defendant. Having considered and reviewed the motion, the response, the applicable law, the testimony, and the argument of counsel, this Court enters the following opinion, findings of fact, and conclusions of law.

BACKGROUND

The Defendant Bruce Wayne Campbell has been charged by a one count indictment with the offense of arson, committed on or about October 11, 1990, causing the death of two persons, in violation of Title 18 U.S.C. § 844(i).

Counsel for the Defendant filed various pretrial motions. On November 9, 1992, this Court held a hearing to consider these motions. All of the motions were ruled on at the hearing, except for portions of the Defendant's motion to suppress statements. Most of the motions ruled on were moot by agreement of the parties.

At the hearing, the Court DENIED the Defendant's Motion To Suppress Evidence. The Defendant failed to put on any evidence to challenge the validity of the consent to search form which the Government established that the Defendant voluntarily, knowingly, and intelligently signed.[1]

At the hearing, according to Sergeant Jones of the Austin Police Department, the officers who executed the arrest warrant and arrested the Defendant read the Defendant his *Miranda* rights. Upon the officers' bringing the Defendant to the police station, Sergeant Jones testified that he personally read the Defendant his basic *Miranda* rights again and that the Defendant acknowledged and understood them. Sergeant Jones did not have the Defendant sign any written statement that the Defendant understood his rights. Sergeant Jones did not ask the Defendant if the Defendant wanted to waive any of his constitutional rights.

Late in the afternoon on the first day of his custody as a suspect in the offense charged in this action, the Defendant stated that he wanted the assistance of a lawyer. Sergeant Jones testified that all questioning then ceased for the day. At the hearing, the Government stipulated to the fact that Defendant Campbell had stated to Sergeant Jones that the Defendant wanted a lawyer and did not wish to talk anymore until he had conferred with a lawyer on the afternoon of the first day in which he was in custody. As the Government conceded at the hearing, the Defendant expressly invoked his Fifth Amendment rights to an attorney and to remain silent.

Apparently, sometime later on the first day, the Defendant asked one of the guards at the jail to let Sergeant Jones know that the Defendant wished to meet with Sergeant Jones. The jail guard testified that her efforts to reach Sergeant Jones that evening were unavailing. Sometime the next morning, Sergeant Jones was contacted and informed that Defendant Campbell desired a meeting.

After picking up the Defendant, Sergeant Jones took the Defendant to a magistrate. The magistrate judge read the Defendant his *Miranda* rights and asked the Defendant if he understood his rights. The Defendant answered affirmatively. The magistrate did not ask the Defendant if he wanted to waive any of those rights. More specifically, the magistrate did not ask the Defendant if he wanted to waive his previously asserted right to counsel. No testimony or evidence was admitted to demonstrate that the magistrate had been informed of the Defendant's earlier request for counsel.

Next, Sergeant Jones took the Defendant to an interview room. Sergeant Jones then left the room to get a tape recorder which he concealed on his person. The Defendant was unaware that his meeting was going to be or actually was taped by Sergeant Jones. After starting the tape recorder, Sergeant Jones went back into the interview room and proceeded to interrogate the Defendant. At no time during this meeting did Sergeant Jones reinform, or in any way explain to, the Defendant his *Miranda* rights. More importantly, Sergeant Jones did not ever expressly or implicitly ask the Defendant if the Defendant was waiving his previously asserted right to counsel.

Richard Smith, an agent with the Treasury Department's Bureau of Alcohol, Tobacco, and Firearms, testified at the hearing. Several hours after the taped meeting with Sergeant Jones, ATF agent Smith stated that he questioned the Defendant about another incident unrelated to the conduct for which the Defendant was being held. If he had been aware of the Defendant's earlier request for counsel, Agent

---

1. The written consent to search form acknowledged that the Defendant had a constitutional right to refuse to consent to the search, but this form did not mention any other constitutional rights of the Defendant.

Smith testified that he would not have proceeded with his interview of the Defendant. Agent Smith testified that he had not been told that the Defendant wanted a lawyer. Agent Smith testified that he informed the Defendant of his *Miranda* rights and that the Defendant signed a written waiver of those rights. Agent Smith testified that the Defendant initiated some conversation about the alleged offense for which the Defendant was in custody.

## MOTIONS TO SUPPRESS

### Motion To Suppress Evidence

The Defendant has moved to suppress all evidence seized by law enforcement officers who entered and searched the Defendant's residence, after the Defendant had signed a written consent to such actions. Because the warrant under which the Defendant was arrested was allegedly not based upon probable cause, the Defendant asserts that he was arrested in violation of the United States Constitution. Because of his allegedly illegal arrest, the Defendant argues that the written consent was involuntary and tainted by the illegal arrest. The Defendant asserts that all evidence obtained as result of the search should therefore be suppressed.

■ Like a search warrant, an arrest warrant subjects the determination of probable cause by the police to judicial review. *See Steagald v. United States*, 451 U.S. 204, 212–213, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981). Warrants must only be supported by "probable cause." *Illinois v. Rodriguez*, 497 U.S. 177, 184, 110 S.Ct. 2793, 2799, 111 L.Ed.2d 148 (1990). Probable cause requires a "proper assessment of probabilities in particular factual circumstances." *Id.* (citation omitted). When a search is incident to an arrest, a warrant is not needed. *Id.* To satisfy the "reasonableness" requirement of the Fourth Amendment, law enforcement officials need always be reasonable, but need not always be correct. *Id.*, 497 U.S. at 185–86, 110 S.Ct. at 2800.

■ The Supreme Court has explained the constitutional protection against warrantless searches:

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. ... The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, ..., or from a third party who possesses common authority over the premises,....

*See Illinois v. Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797 (holding that a reasonableness standard applies to determine the validity of "apparent authority" searches). The invitation of a person who has joint control and common authority over a place is a valid consent for law enforcement officials to enter and search the place. *See id.*, 497 U.S. at 181, 110 S.Ct. at 2797; *see also United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir.1991). Although the Fourth Amendment generally prohibits a warrantless entry into a person's home, this prohibition does not apply when voluntary consent has been obtained from either the person whose property is searched or a third party who has common authority over the premises. *See Illinois v. Rodriguez*, 497 U.S. at 181, 110 S.Ct. at 2797.

■ A search warrant is not necessary when the facts establish that the defendant voluntarily consented to the search. *See United States v. Harrison*, 918 F.2d 469, 473 (5th Cir.1990). The issue of voluntary consent is a question of fact to be determined from the totality of the circumstances. *See id.*

■ The Government bears the burden to prove the voluntariness of consent by a preponderance of the evidence. *See United States v. Hurtado*, 905 F.2d 74, 76 (5th Cir.1990) (en banc). The Fifth Circuit has announced five factors that should be assessed in determining the voluntariness and effectiveness of a defendant's consent to a warrantless search: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education

and intelligence; (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir.1991).

In *Yeagin*, the Fifth Circuit found that two of these factors supported the defendant's contention that the consent was not voluntary. *Id.* at 800. Because he had been arrested and handcuffed, the defendant's custodial status clearly was not voluntary. *Id.* Also, the defendant knew that incriminating evidence would be found if he agreed to the search. *Id.*

Nevertheless, based upon the four other factors and the totality of the circumstances in the case, the Fifth Circuit held that the defendant's consent was voluntarily given in *Yeagin*. *Id.* at 801. The Government presented evidence indicating that no coercion was used to obtain the defendant's consent. *Id.* at 800. Also, the law enforcement officials had properly advised the defendant of his right to counsel and his right to remains silent. *Id.* at 800–801. Also supporting a finding of voluntariness of the consent, the written consent statement that the defendant signed contained a statement that the defendant understood his right to refuse consent. *Id.* at 801. Besides being cooperative throughout the incident, the defendant was capable of understanding his rights and making a voluntary choice to consent to the search. *Id.*

In *United States v. Tedford*, 875 F.2d 446 (5th Cir.1989), the court affirmed the trial court's conclusion that a consent to search was voluntarily given by a defendant who was in custody following a lawful arrest. *Id.* at 452. The Fifth Circuit upheld the trial court's decision that the testimony of the law enforcement officials was more credible than that of the defendant. *Id.* Although he had one hand handcuffed to a chair, the defendant was very cooperative and voluntarily signed a consent to search form. *Id.*

When a defendant voluntarily consents to a search, the evidence obtained as a result of the consent search is admissible. *Yeagin*, 927 F.2d at 801. Although knowledge of the right to refuse consent is a factor to be weighed in determining voluntariness, the failure to advise an individual of the right to withhold consent is not alone determinative of voluntariness. *See United States v. Galberth*, 846 F.2d 983, 988 (5th Cir.1988), *cert. denied*, 488 U.S. 865, 109 S.Ct. 167, 102 L.Ed.2d 137. Similarly, the nervousness of the defendant does not preclude a finding of voluntariness. *Id.*

In the present action, the arrest warrant was properly issued based upon the existence of probable cause. The uncontroverted testimony of Sergeant Jones of the Austin Police Department showed that he had a good faith and reasonable belief in the information which he placed in his affidavit upon which the arrest warrant was based. The affidavit itself shows probable cause existed to issue the arrest warrant for the Defendant Campbell and to arrest the Defendant Campbell.

In his motion to suppress the evidence, the Defendant asserted that he was illegally arrested and that, consequently, the written consent to search which he signed was invalid. The Defendant did not provide any evidence or elicit any testimony to support any of his assertions made in his motion to suppress evidence.

Exceeding its burden of proof, the Government demonstrated, by clear and convincing evidence, that the written consent form was voluntarily signed by the Defendant. The Government also showed that the Defendant acted in a knowing and intelligent manner when he signed this form. The Defendant did not controvert or challenge any of this evidence presented by the Government.

Motion To Suppress Statements

The Defendant requests that his post-arrest statements be suppressed because the statements were coerced and involuntary. The Defendant also states that he was not warned of his constitutional rights before the statements were made. The Defendant also repeats his allegation that the statements were made as a result of an illegal arrest. Further, the Defendant argues that he invoked his right to remain silent and that law enforcement officials

did not honor that right, and the Defendant asserts that he had requested to speak to an attorney, which right was also denied. Finally, the defendant argues that he was incapable of giving a truly free and voluntary statement because he was so intoxicated that he was not capable of making a truly free and cognitive decision and that the officers improperly induced the Defendant to make the statements.

The Defendant did not support many of the contentions that he made in his motion. No evidence showed that the Defendant was intoxicated at the time any of the disputed statements were made to law enforcement officials. Abundant evidence demonstrates that the Defendant was read his *Miranda* rights on numerous occasions, immediately following his arrest and during his subsequent custodial detention.

Three distinct sets of statements made by the Defendant to law enforcement officials are at issue. The first involved statements made to Sergeant Jones on the same day on which the Defendant was arrested and before the Defendant requested the assistance of an attorney for the first time.

 Based upon the testimony and the evidence, this Court concludes that the Defendant had been fully informed of his constitutional rights before this first period of custody during which the Defendant made the first set of statements to Sergeant Jones. As stated earlier in this opinion, the Defendant had been lawfully arrested. The Defendant had not asserted any of his constitutional rights before making any of the statements during this time period. The Government proved convincingly that these particular statements were voluntarily, knowingly, and intelligently made. No unconstitutional coercion was present. As ordered at the hearing, this Court DENIES the motion to suppress statements in relation to this first set of statements made by the Defendant on the first day of his incarceration before he requested the assistance of counsel.

The second set of disputed statements involves the meeting that the Defendant had with Sergeant Jones on the second day of the Defendant's incarceration. At the hearing, both a copy of the tape of this meeting and a transcript of the tape were admitted into evidence.

 Under the Sixth Amendment and the Fifth Amendment of the United States Constitution, after invoking his or her right to counsel by requesting assistance of counsel, *any* waiver of Sixth Amendment rights by the defendant in a discussion initiated by the police is inadmissible in the prosecution's case-in-chief. *See Michigan v. Harvey,* 494 U.S. 344, 349, 110 S.Ct. 1176, 1179, 108 L.Ed.2d 293 (1990); *Michigan v. Jackson,* 475 U.S. 625, 636, 106 S.Ct. 1404, 1411, 89 L.Ed.2d 631 (1986); *United States v. Carpenter,* 963 F.2d 736 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992). Any such statements are presumed invalid, and such statements are consequently inadmissible against the Defendant during the prosecution's case-in-chief. *Michigan v. Harvey,* 494 U.S. at 349, 110 S.Ct. at 1179. However, such a statement that would be inadmissible during the prosecution's case-in-chief is admissible for the purposes of impeachment of conflicting testimony by the defendant. *Id.,* 494 U.S. at 350, 110 S.Ct. at 1180 (citations omitted).

 The Supreme Court applies a settled approach to questions involving the waiver of fundamental constitutional rights. *See Michigan v. Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409 (specifically addressing the waiver of the Sixth Amendment right to counsel, but also generally addressing waivers of such fundamental rights). The Government has the burden of establishing a valid waiver. *Id.* (citation omitted). "Doubts must be resolved in favor of protecting the constitutional claim." *Id.* In *Michigan v. Jackson,* the Supreme Court reemphasized its earlier holding in *Edwards* that, after a suspect has requested counsel, any subsequent police-initiated questioning is not permissible even though: the suspect was again fully advised of his rights; the suspect's acquiescence in police-initiated questioning; and, the suspect signed a written waiver of his rights. *Michigan v. Jackson,* 475 U.S. at 635, 106 S.Ct. at 1410. Whether the right to coun-

sel has been invoked under the Fifth Amendment or the Sixth Amendment, written waivers are insufficient to justify police-initiated interrogations after such a right has been invoked. *Id.* The Fifth Amendment guarantees the right to counsel at custodial interrogations. *Id.*, 475 U.S. at 629, 106 S.Ct. at 1407. The Sixth Amendment provides the same right at post-arraignment interrogations. *Id.* The Sixth Amendment right to counsel at a post-arraignment interrogation entitles a defendant to at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation. *Id.*, 475 U.S. at 632, 106 S.Ct. at 1408–1409. Law enforcement officials cannot claim ignorance of a defendant's assertion of his right to counsel to any other state actor, such as to a court at arraignment. *Id.*, 475 U.S. at 634, 106 S.Ct. at 1410.

Similarly, in the present action, the law enforcement officials cannot claim ignorance of the Defendant's first request for counsel made at the end of the day on which the Defendant was arrested for the offense charged in this case. Indeed, Sergeant Jones was well aware of this first invocation of the Defendant to his right to counsel and to remain silent. Sergeant Jones should have informed the magistrate of this invocation of rights by the Defendant. At a minimum, the police officer or the magistrate judge should have informed the Defendant of the possibility of a waiver of his right to counsel and the effects thereof.

▮▮▮ When an accused has invoked his or her right to counsel during a custodial interrogation, a valid waiver of that right cannot be shown by the accused's responding to further police-initiated interrogation even if the accused has been advised of his rights. *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1884–1885, 68 L.Ed.2d 378 (1981). The broad protection of *Edwards* of a suspect's Fifth Amendment right to counsel is not terminated or suspended by the suspect's consultation with counsel. *Minnick v. Mississippi*, 498 U.S. 146, ——, 111 S.Ct. 486, 489, 112 L.Ed.2d 489 (1990). Once an accused

has expressed a right to counsel, the accused is not subject to further interrogation until counsel is provided, unless the accused personally initiates further communication with the law enforcement officials. *Edwards*, 451 U.S. at 484–485, 101 S.Ct. at 1885. When a defendant personally initiates a meeting with a law enforcement official, the Constitution does not prohibit the law enforcement official "from merely listening to [the defendant's] voluntary, volunteered statements, and using them against [the defendant] at the trial." *Id.*, 451 U.S. at 485, 101 S.Ct. at 1885. The Supreme Court further explained:

> The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would be no infringement of the right that [the defendant] invoked and there would be no occasion to determine whether there had been a valid waiver.

*Id.*, 451 U.S. at 485–486, 101 S.Ct. at 1885 (citation omitted). Further explaining the distinction between an entirely voluntary statement and an interrogation, the Supreme Court noted:

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Id.*, 451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9. Writing for the majority, Justice Rehnquist squarely rejected the contention that an "initiation" of a conversation by an accused would also amount to a waiver of a previously asserted right to counsel:

> Thus, [the appellate court] was wrong in thinking that an "initiation" of a conversation by an accused not only satisfied

the *Edwards* rule, but *ex proprio vigore* sufficed to show a waiver of the previously asserted right to counsel. *The inquiries are separate, and clarity of application is not gained by melding them together.*

See *Oregon v. Bradshaw,* 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2834–2835, 77 L.Ed.2d 405 (1983). More recently, the Supreme Court has restated this basic rule:

[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492–493, 83 L.Ed.2d 488 (1984). To decide if a waiver of a previously asserted right to counsel has occurred, the court must weigh specific facts and circumstances, including the background, experience, and conduct of the accused. *Oregon v. Bradshaw,* 462 U.S. at 1046, 103 S.Ct. at 2835. These legal standards squarely apply to the present action.

Although it appears that the Defendant initiated the meeting with Sergeant Jones on the second day of the Defendant's custodial status,[2] this Court does not need to decide that question. Because the meeting that occurred on the second day of the Defendant's being in custody was clearly a custodial interrogation, the Government has the burden to prove that the Defendant knowingly, intelligently, and voluntarily waived his Fifth Amendment right to counsel. The Government has not met its required burden of proof on this issue.

 The Supreme Court has concluded that the *Miranda* rights are effective "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–301, 100 S.Ct.

1682, 1689, 64 L.Ed.2d 297 (1980). Under *Miranda,* an "interrogation" includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," as well as express questioning. *Id.,* 446 U.S. at 301, 100 S.Ct. at 1689–1690 (footnotes omitted). "Incriminating response" means "any response—whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial." *Id.* at n. 5 (emphasis in original). The Supreme Court explained:

A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since, the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Id.,* 446 U.S. at 301–302, 100 S.Ct. at 1690 (emphasis in original; footnotes omitted). Even if police officers' remarks may amount to "subtle compulsion" when not directed at the suspect, the circumstances must additionally show that any incriminating response was a product of the officers' words or actions that the officers should have known were reasonably likely to cause such a response. *Id.,* 446 U.S. at 303, 100 S.Ct. at 1691.

 From the Government's transcript of the tape and the tape itself of the meeting between Sergeant Jones and Defendant Campbell on the second day of Defendant's custody, this Court finds that the meeting constituted a "custodial interrogation" under *Miranda* and *Rhode Island v. Innis.* The officer's express questions and statements were designed to elicit incriminating

2. The Court does note its concern as to exactly who initiated the meeting. The testimony elicited at the hearing was that the Defendant attempted to meet with Sergeant Jones toward the end of the first day that the Defendant was incarcerated. Sergeant Jones did not receive the message until the next day. Then, Sergeant

Jones contacted the Defendant, and a meeting between these two individuals then took place. Sergeant Jones first took the Defendant before a magistrate judge. Then, the officer put the Defendant in an interview room. Finally, the meeting began once Sergeant Jones was ready.

responses, either exculpatory or inculpatory. The officer knew, or at the least, reasonably should have known that his questions and statements would cause incriminating responses. Using a concealed tape recorder, Sergeant Jones must have known that he was reasonably likely to elicit incriminating evidence. Further, if the prosecution were not going to seek to introduce these statements at trial, then this portion of this opinion would be unnecessary and moot. Because this encounter was a custodial interrogation, the Government must also demonstrate that the Defendant waived his previously asserted constitutional rights.

This Court is also concerned with the possible lack of good faith of the police officer in this case. Although the officer did present the suspect to a magistrate who reinformed the suspect of his rights, the officer did not even attempt to get the suspect to execute a written waiver of those rights. The officer was well aware of the Defendant's assertion of his right to counsel and his right to remain silent on the preceding day. Also, the officer did not explain the effect to the suspect of his proceeding without the assistance of a lawyer. Even though the suspect made the initial request to meet with the police officer, many hours passed between the time of that request and the actual meeting.

Towards the end of this meeting and before the Defendant requested a lawyer, Sergeant Jones stated, "None of that's admissible at the trial, okay....". *See* Government's Tape (Defendant's Exhibit 2 at hearing).[3] It is difficult to understand what the officer precisely meant by this statement. From the tape, Sergeant Jones may have been responding to Defendant Campbell's statement about something inaudible to do "with the law."[4] This statement could imply to the Defendant that the contents of the meeting would not be admissible at trial.

On the second day of the Defendant's custody, the Government has shown that the Defendant was again informed of his constitutional rights, this time by a magistrate official, and that the Defendant said he understood those rights.[5] The Court finds no support whatsoever for the Government's contention that the Defendant's stating that he understood his rights to be the equivalent of a waiver of his rights, especially because the Defendant had expressly invoked his right to counsel on the preceding day.[6]

The Government has relied upon several cases to support its argument that a valid waiver of the Defendant's asserted right to counsel had occurred. In a habeas proceeding in *Plazinich v. Lynaugh,* 843 F.2d 836 (5th Cir.1988), *cert. denied,* 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973, the Fifth Circuit held that a defendant had initiated a meeting with police and had properly waived his previously asserted right to counsel. Unlike the Defendant in the present action, the defendant in *Plazinich:* was advised by an assistant district attorney of the effects of a written confes-

3. The Government's transcript of this tape contained the words, "None of thats submisable at trial, o.k. ..." (sic). However, upon listening to the tape itself, this Court clearly understood the words used by Sergeant Jones to be those used in this opinion.

4. It is possible that the officer was referring to a reference by the Defendant to the Defendant's prior experiences "with the law," but this Court finds that the Defendant's statements are incomprehensible immediately preceding his words "with the law," although these three words were not included in the Government's transcript of the tape. Only the word "(inaudible)" was used at this juncture in the transcript.

5. Near the end of the transcript and the tape of the Defendant's meeting with Sergeant Jones, the Defendant acknowledges that he understood his rights that a judge had read to him a short time ago. However, both the tape and the transcript demonstrate that Sergeant Jones mentioned, near the end of this meeting, the Defendant's right to remain silent and to terminate the conversation, but the exhibits contain no reference by Sergeant Jones to the Defendant's right to a lawyer or whether the Defendant was waiving that right.

6. The Government conceded at the hearing that the Defendant had expressly invoked his Fifth Amendment right to counsel towards the end of the Defendant's first day in custody, following the Defendant's initial statements to Sergeant Jones on that day.

sion; was allowed to call his attorney; and, executed written confession containing a formal waiver of his *Miranda* rights. *Id.* at 837–838. Finding that there had been no interrogation, the Fifth Circuit held that this written confession was admissible and not in violation of *Edwards. Id.* at 837 and 840. In the present action, the law enforcement officials did interrogate the Defendant and the officials did not obtain a waiver of the Defendant's previously asserted right to counsel.

The Government also relies upon *Hendricks v. Vasquez,* 974 F.2d 1099 (9th Cir. 1992). In that case, the defendant had only invoked his right to remain silent and had not invoked his right to counsel. *Id.* at 1105. The court construed the subsequent initiation of conversation by the defendant as a waiver of the defendant's previously asserted right to remain silent. *Id.* The Ninth Circuit did not have to address a previously asserted right to counsel. This Court agrees that a subsequent initiation of a conversation can be viewed as a waiver of a previously asserted right to remain silent. Under the caselaw, this Court cannot hold that such action can also amount to a waiver of a previously asserted right to counsel.

The case most beneficial to the Government's position is *United States v. Velasquez,* 885 F.2d 1076 (3d Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 497. In that case, a divided panel of the Third Circuit held that a defendant's second question to the police amounted to an implicit waiver of the defendant's previously asserted right to counsel. *Id.* at 1087. Basing its decision upon *Oregon v. Bradshaw,* the Third Circuit further concluded that the defendant's waiver was knowing and intelligent because she was a mature adult and had graduated from college. *Velasquez,* 885 F.2d at 1087. The majority further found that the waiver was voluntarily made since only a short time had passed since she had received her *Miranda* warnings and made her statement. *Id.*

The only argument, not evidence, that the Government offered in the present action to demonstrate a waiver is the Defendant's prior experience with the law. The Government offered no evidence to demonstrate that the Defendant was aware that he might be waiving his previously asserted right to counsel, and the Government failed to show that the Defendant was aware of the effect of such a waiver. Also, the defendant in *Velasquez* asked questions to which answers were provided by the federal agent. No questions were asked by Defendant Campbell at the beginning of his meeting during the second day of his custody with Sergeant Jones. Sergeant Jones asked all of the questions at the beginning of that meeting.

A significant difference from the *Oregon v. Bradshaw* case and the present action is that the defendant in *Bradshaw* was found to have knowingly and voluntarily signed a written waiver of his constitutional *Miranda* rights before any incriminating statements were made following the defendant's initiation of a meeting. *See Oregon v. Bradshaw,* 462 U.S. at 1042, 103 S.Ct. at 2833. In the present action, Defendant Campbell did not sign any written waiver of his *Miranda* rights, nor has the Government shown that he waived those rights in any other way.

 Once read his or her *Miranda* rights, a defendant can properly waive those rights, especially when the defendant signs a written waiver form. *See generally Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). In *Colorado v. Spring,* the defendant had never expressly invoked any of his *Miranda* rights. Once a Fifth Amendment right to counsel has been invoked, the Government must show more to demonstrate a waiver than an implicit waiver and understanding based merely upon a defendant's being informed of and acknowledged understanding of his *Miranda* rights.

The Fifth Circuit has held that a defendant's mere refusal to sign a *Miranda* waiver form does not additionally constitute an invocation of the right to remain silent or the right to counsel. *United States v. McKinney,* 758 F.2d 1036, 1045 (5th Cir.1985). Also, the mere refusal to

sign a waiver form does not preclude a court from finding a waiver has occurred. *Id.* Refusing to sign a waiver form is very different from expressly invoking a right to counsel. Even an unintentional violation of *Edwards* is still a violation. *United States v. Webb,* 755 F.2d 382, 389 (5th Cir.1985).

To agree with the Government's argument that a defendant in custody can waive a previously asserted and invoked constitutional right merely by the defendant's stating that he understands his rights following a subsequent, additional reading of his or her *Miranda* rights would unjustly and unfairly undermine the fundamental constitutional rights of defendants accused of crimes. Once a defendant has invoked a constitutional right, the defendant's statement that he understands his constitutional rights cannot by itself amount to a waiver of the previously asserted right.

Otherwise, law enforcement officials would merely have to reinform a defendant of his constitutional rights and ask the defendant if he understands those rights. Then, if the defendant responds that he does understand his rights, the defendant would be held to have waived his previously asserted right.

■ Once a defendant has invoked his Fifth Amendment right to counsel, the following rules must be followed by law enforcement officials. When a suspect initiates a meeting *and* the police then proceed to interrogate the suspect, the law enforcement officials must obtain at least an implicit waiver, an express oral waiver, or much more preferably a signed written, waiver of the suspect's previously invoked right to counsel. If the Government had shown that the Defendant had been merely informed that he would be waiving his previously asserted right to counsel, then the Defendant by continuing to volunteer information could be said to have implicitly waived that right. Merely reinforming the Defendant of his rights does not effectuate an implicit waiver of a previously asserted

right to counsel. When a suspect initiates a meeting with police and the police do no more than listen to the suspect's statements, the suspect's previously asserted right to counsel would not be violated because no interrogation has occurred. Although a suspect may reasonably be viewed to have waived his or her previously asserted right to silence because of the suspect's initiating a meeting and voluntarily making statements, the same cannot be true of a previously asserted right to counsel when an interrogation occurs.

■ Once a Fifth Amendment right to counsel has been invoked, the Government bears the burden to demonstrate that any waiver thereof was voluntary, knowing, and intelligent. The Government did not meet that burden. This Court holds the following: After a defendant has invoked a constitutional right, a defendant's merely stating or repeating he understands his constitutional rights cannot amount to a waiver of those rights.

■ Towards the end of the meeting with Sergeant Jones on the second day that the Defendant was in custody, the Defendant stated, "I don't want you to get all mad but I'd rather be with a lawyer...." The Government has argued that this response was only to state the Defendant's intention that he wanted to talk with a lawyer before putting anything in writing. By making this statement, the Defendant showed that he had not waived his right to a lawyer. Also, on the tape, although not revealed by the transcript, a silent pause of over 10 seconds occurs before the Defendant makes this statement, and several statements were made prior to this request for a lawyer and the officer's inquiry if the Defendant was ready to put his statements into writing.[7] Although not entirely clear from the tape or the transcript, this Court must conclude that the Defendant made a general request for a lawyer with this remark. The Defendant clearly indicated his desire to have a lawyer with him.

---

7. Because of the definite hesitation of the Defendant before making this request for a lawyer and because of the express concern of the De-

fendant that he did not want to anger the officer, this Court also notes the coercive and intimidating atmosphere perceived by the Defendant.

If a defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no more questioning." *See Miranda v. Arizona*, 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see also Arizona v. Roberson*, 486 U.S. 675, 680, 108 S.Ct. 2093, 2097, 100 L.Ed.2d 704 (1988). Once a suspect indicates that he wants the assistance of counsel during a custodial interrogation, law enforcement officers may not approach the suspect to interrogate him about the subject offense or any other offense. *United States v. Carpenter*, 963 F.2d 736, 739 (5th Cir.1992) (citations omitted).

"[*A*]ll questioning must cease after an accused requests counsel." *Smith v. Illinois*, 469 U.S. at 98, 105 S.Ct. at 494 (emphasis in original). Any statements by the accused made after his request for counsel are only relevant to the distinct question of whether the accused has waived the right that he invoked. *Id.*, 469 U.S. at 100, 105 S.Ct. at 495. A valid waiver of an earlier request for counsel may not be established by showing that the accused responded to further police-initiated interrogation. *Id.*, 469 U.S. at 98, 105 S.Ct. at 494.

Therefore, all remarks made by the Defendant to Sergeant Jones following this second request for a lawyer are not admissible and are suppressed.

Sometime after his meeting with Sergeant Jones, the Defendant met with ATF agents. The Government offered no evidence to show that the Defendant initiated this meeting. This meeting was initiated by law enforcement officials. Thus, because the Defendant had by then twice invoked his right to counsel, all statements made by the Defendant at this meeting are not admissible at trial and are hereby SUPPRESSED.

In *Arizona v. Roberson*, the Supreme Court addressed a situation similar to the meeting of the Defendant in this action with the ATF agents. *See Arizona v. Roberson*, 486 U.S. at 678, 108 S.Ct. at 2096. Once a suspect has indicated his desire to have an attorney, any further police-initiated questioning about an investigation different from the one for which the suspect is in custody is not permissible as long as the defendant is still in custody. *Id.*, 486 U.S. at 682 and 683, 108 S.Ct. at 2098 and 2099. Any statements derived from such a meeting must be suppressed. *Id.* The Fifth Circuit has stated:

> Unlike the Sixth Amendment right to counsel, which applies only to the charged offense, the Fifth Amendment right to assistance of counsel during custodial interrogations is not offense-specific.

*Carpenter*, 963 F.2d at 739. "The Fifth Amendment shields the suspect from interrogation about *any* offense, charged or uncharged." *Id.*

CONCLUSION

IT IS ORDERED that the Defendant's Motion To Suppress Evidence is hereby DENIED. The warrant was properly issued on the basis of probable cause and the written consent to search was knowingly, intelligently, and voluntarily given based upon a totality of the circumstances.

IT IS FURTHER ORDERED that the Defendant's Motion To Suppress Statements is GRANTED IN PART AND DENIED IN PART. Prior to the Defendant's invoking his right to counsel and right to remain silent, any statements made by the Defendant during his first day of custody are admissible. All subsequent statements made by the Defendant are not admissible during the Government's case-in-chief. The statements made on the second day during the interrogation by Sergeant Jones are not admissible because the Government did not prove that the Defendant knowingly and intelligently and voluntarily waived his previously asserted right to counsel. Because the Defendant had twice before invoked his right to counsel, the statements made by the Defendant to the ATF agents are not admissible because the ATF agents initiated the interrogation.