# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2007

Charles R. Fulbruge III
Clerk

No. 06-41321

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ELISEO HINOJOSA-ECHAVARRIA

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas, Laredo Division
USDC No. L-06-184

Before JONES, Chief Judge, DeMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Eliseo Hinojosa-Echavarria (Hinojosa) pled guilty to possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), reserving the right to appeal the denial of his motion to suppress. He was sentenced to 70 months imprisonment. On appeal, Hinojosa challenges the district court's denial of his motion to suppress and the reasonableness of his sentence. We hold that the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

properly denied the motion. Furthermore, Hinojosa has failed to overcome the presumption that his sentence was reasonable. We affirm.

## I. Factual Background

Oscar Trevino (Agent Trevino) is a senior Border Patrol agent assigned to the Laredo North Border Patrol station (Laredo North) in Laredo, Texas. The Laredo North station is located 15 miles north of Laredo on I-35. The primary purpose of the Laredo North checkpoint is to intercept illegal aliens. Agent Trevino has been stationed at the Laredo North location for the five years he has been employed as a Border Patrol agent.

On January 13, 2006, Agent Trevino was working at the Laredo North checkpoint when a Ford F-150 truck with Mexican license plates entered the primary inspection lane. Hinojosa was the driver and sole occupant of the truck. Agent Trevino first asked Hinojosa whether he was a United States citizen. Hinojosa provided no verbal response,[1] but handed Agent Trevino an I-94 visa.[2] Hinojosa's I-94 visa was stamped "B(2)", indicating that he was entering the United States for tourist purposes. Hinojosa concedes that his I-94 visa allowed entry for tourist purposes only. In order to determine whether Hinojosa was in compliance with the stated purpose on his visa, Agent Trevino asked Hinojosa questions to determine whether he was entering the United States for tourist purposes.

Agent Trevino first asked Hinojosa his intended destination, to which Hinojosa answered, "Houston." Next, Agent Trevino asked Hinojosa the reason

[1] Agent Trevino asked the initial question in English, however, because Hinojosa did not verbally respond, Agent Trevino conducted the remainder of the inspection in Spanish.

[2] At the suppression hearing, Agent Trevino testified to the following: (1) In order to travel further than 25 miles from the United States-Mexico border, an individual must have an I-94 visa; (2) The I-94 visa is stamped either "B(1)" or "B(2)" to indicate the purpose of the individual's travel; (3) A B(1) stamp allows a person to temporarily enter the United States for business purposes; and (4) A B(2) stamp allows a person to temporarily enter the United States for tourist purposes.

for his visit to Houston. Hinojosa stated that he was going to "pick up a truck." After he conducted a visual inspection of the truck and noticed that Hinojosa did not have any towing equipment, Agent Trevino asked Hinojosa how he was going to transport the truck back to Mexico. Hinojosa responded that he was going to tow the truck back. Agent Trevino noted that, during his visual inspection, Hinojosa became nervous. Agent Trevino asked how Hinojosa planned to tow the truck back without any towing equipment. Hinojosa indicated that he would purchase the equipment at an Auto Zone store located across the street from where he was going to pick up the truck.

Because an I-94 visa requires its holder to be employed in their country of origin, Agent Trevino next asked Hinojosa what he did for a living. Hinojosa responded that he "bought and sold cars." Thus, Agent Trevino asked why Hinojosa did not already have a tow dolly or trailer to transport the vehicle. Hinojosa did not provide an answer. Rather, Agent Trevino noted, Hinojosa "began stuttering and got extremely nervous." At this point, Agent Trevino referred Hinojosa for a secondary inspection. It is undisputed that the entire exchange lasted only one to one and one-half minutes.

At the secondary inspection, Agent Trevino, along with a narcotics and people sniffing dog, conducted a search of the exterior of Hinojosa's vehicle. The dog alerted to the vehicle. Agent Trevino next had the dog conduct a search of the interior of the vehicle, and the dog again alerted and indicated to the air conditioning vent located to the right of the steering wheel, in the middle of the truck. Ultimately, agents found 9.12 kilograms of cocaine in that part of Hinojosa's truck.

On January 31, 2006, a federal grand jury in the Southern District of Texas, Laredo Division, returned a one-count indictment, charging Hinojosa with possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On February 17, 2006, Hinojosa

filed a motion to suppress the cocaine seized from his vehicle. The district court conducted an evidentiary hearing and denied the motion on March 30, 2006. On April 12, 2006, the district court approved a conditional plea agreement which preserved Hinojosa's right to appeal the denial of his motion to suppress. Hinojosa was sentenced on August 16, 2006, to 70 months imprisonment, a five year term of supervised release, and a mandatory special assessment of $100.00. On August 21, 2006, Hinojosa timely filed his notice of appeal with this court.

## II. Discussion

### A. Standard of Review

This court reviews the district court's factual findings regarding a motion to suppress for clear error and its legal conclusions de novo. United States v. Portillo-Aguirre, 311 F.3d 647, 651-52 (5th Cir. 2002). When the facts are undisputed, questions regarding probable cause and reasonable suspicion are resolved as questions of law. Id. at 652. This court views the evidence in the light most favorable to the party that prevailed in the district court. United States v. Ellis, 330 F.3d 677, 679 (5th Cir. 2003).

We review a district court's interpretation and application of the sentencing guidelines de novo and factual findings for clear error. United States v. Villanueva, 408 F.3d 193, 202, 203 & n.9 (5th Cir. 2005).

### B. Detention of Hinojosa

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." City of Indianapolis v. Edmond, 531 U.S. 32, 37 (2000). However, the Supreme Court has upheld the constitutionality of permanent immigration checkpoints. United States v. Martinez-Fuerte, 428 U.S. 543, 566 (1976). Border Patrol agents stationed at a permanent checkpoint may stop a

vehicle, question its occupants about citizenship, and conduct a visual inspection of the vehicle without any individualized suspicion that the vehicle or its occupants are involved in a crime. Id. at 558-61.

"To determine the lawfulness of a stop, we ask whether the seizure exceeded its permissible duration. We look to the scope of the stop in order to determine its permissible duration." United States v. Machuca-Barrera, 261 F.3d 425, 432 (5th Cir. 2001). The scope of an immigration checkpoint stop is limited to determining the citizenship status of persons passing through the checkpoint. Id. at 433. "This would include the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention." Id.

"An officer may ask questions outside the scope of the stop, but only so long as such questions do not extend the duration of the stop. It is the length of the detention, not the questions asked, that makes a specific stop unreasonable . . . ." Id. at 432; United States v. Shabazz, 993 F.2d 431, 436 (5th Cir. 1993) ("[W]e reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation."). "So long as a checkpoint is validly created, policing the duration of the stop is the most practical enforcing discipline of purpose." Machuca-Barrera, 261 F.3d at 434. In Machuca-Barrera, this court found that a stop lasting "only a couple of minutes" was within the permissible duration of an immigration checkpoint stop. Id. at 435.

The parties do not contest that Hinojosa's initial stop lasted no longer than one to one and one half minutes. Because this is within the time approved in Machuca-Barrera, we find that the initial stop at the primary inspection point did not exceed the permissible duration of an immigration stop. The relevant

inquiry, then, is whether Agent Trevino unlawfully extended the stop beyond its permissible duration when he referred Hinojosa for a secondary inspection.

"[I]f the initial, routine questioning generates reasonable suspicion of other criminal activity, the stop may be lengthened to accommodate its new justification." Id. at 434. "The key is the rule that a stop may not exceed its permissible duration unless the officer has reasonable suspicion." Id. Reasonable suspicion requires more than a mere unparticularized hunch, but considerably less than proof by a preponderance of the evidence. United States v. Gonzalez, 190 F.3d 668, 671 (5th Cir. 1999). The relevant inquiry is whether the "totality of the circumstances" creates a reasonable suspicion of criminal activity. See United States v. Arvizu, 534 U.S. 266, 273 (2002) (emphasis added).

Agent Trevino testified that his primary purpose for stopping Hinojosa became the interdiction of narcotics or alien-smuggling immediately after Hinojosa failed to respond to his final question regarding Hinojosa's lack of proper towing equipment. Our inquiry as to the constitutionality of the stop's duration considers only whether Agent Trevino developed reasonable suspicion prior to this point, thus justifying the need to prolong the encounter. See Machuca-Barrera 261 F.3d at 435. Based on the testimony of Agent Trevino at the hearing, the district court did not err in holding that reasonable suspicion existed to continue the checkpoint stop. The district court found that, considering Agent Trevino's five years of experience as a Border Patrol agent, a variety of factors viewed in totality gave rise to reasonable suspicion of criminal activity.

Agent Trevino stated that Hinojosa "began to get a little bit nervous," "[h]is voice started cracking a bit," and that "[h]e couldn't maintain eye contact" upon noticing that Agent Trevino was conducting a visual inspection. However, a generic claim of nervousness alone does not justify the extension of the stop. Portillo-Aguirre, 311 F.3d at 656 & n.49 (emphasis added).

6

When Hinojosa stated that he did not have towing equipment, Agent Trevino began to suspect that he was engaging in criminal activity. Agent Trevino found, in his experience, that it was unusual for Hinojosa to not have the proper equipment for towing a car from Houston to Mexico. This suspicion increased when Hinojosa stated that he bought and sold cars for a living. Agent Trevino further found this inconsistent with the terms of Hinojosa's I-94 visa. When he asked his final question -- regarding why Hinojosa did not have his own towing equipment--Hinojosa did not respond, began stuttering and got extremely nervous. Agent Trevino testified that Hinojosa's nervousness was present from the beginning of the questioning and increased with each additional question asked. Finally, the district court noted that the Laredo North checkpoint was located in an area known for the frequency of arrests for narcotics and illegal aliens. Agent Trevino testified that he made in excess of 400 arrests for narcotics and 800 arrests for immigration at this particular checkpoint.

Viewed together, the violation of Hinojosa's visa, the inconsistencies in his explanations, his nervousness and stuttering, his failure to respond to Agent Trevino's final question, and the high number of narcotics and alien-smuggling cases occurring at this particular checkpoint, created a reasonable suspicion that Hinojosa was engaged in criminal activity. Thus Hinojosa was properly referred for a secondary inspection. We find that Agent Trevino developed reasonable suspicion during the permissible duration of the routine immigration check, thus justifying an extension of the stop. For these reasons, we affirm the district court's denial of Hinojosa's motion to suppress.

C. Reasonableness of Hinojosa's Sentence

The Guidelines range considered by the district court was 70 to 87 months. The district court imposed a 70 month sentence. Hinojosa's Guidelines sentence was properly calculated and is presumed reasonable. See United States v. Alonzo, 435 F.3d 551, 554 (5th Cir. 2006). Hinojosa fails to make any argument

demonstrating that the district court's imposition of his sentence was unreasonable. Rather, Hinojosa argues that his sentence was unreasonable as a matter of law, recognizing that the bases for these arguments are foreclosed under current Fifth Circuit precedent.[3] As such, we affirm the district court's sentence.

For the foregoing reasons, the defendant's conviction and sentence are AFFIRMED.

---

[3] Hinojosa raises multiple arguments regarding the advisory nature of the Guidelines and current issues currently on certification before the Supreme Court. See United States v. Gall, 446 F.3d 884 (8th Cir. 2006), cert. granted ___ U.S. ____, 2007 WL 1660978 (U.S. June 11, 2007) (No. 06-7949); United States v. Kimbrough, 174 F. App'x 798 (4th Cir. 2006), cert. granted ___ U.S. ___ 2007 WL 1660997 (U.S. June 11, 2007) (No. 06-6330). However, he acknowledges that current Supreme Court and Fifth Circuit precedent precludes these arguments and raises the issues for the purpose of preserving them for possible further review.