# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40927

UNITED STATES OF AMERICA,

 Plaintiff - Appellee

v.

RAYMOND ANTONIO MCMILLON,

 Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**
July 20, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:14-CR-576-2

Before STEWART, Chief Judge, and JONES and DENNIS, Circuit Judges.

PER CURIAM:*

Border Patrol agents at an immigration checkpoint discovered ten undocumented aliens hidden in a tractor-trailer in which Defendant-Appellant Raymond McMillon ("McMillon") was a passenger. McMillon was subsequently convicted of several alien transportation offenses and sentenced to a total of 41 months' imprisonment. He now appeals, challenging the denial of his motion to suppress evidence seized from the checkpoint stop, the denial

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40927

of his motion to dismiss the indictment on speedy trial grounds, the sufficiency of the evidence on each of his convictions, and the denial of his request for a mitigated role adjustment at sentencing.   Finding no error in the district court's proceedings, we AFFIRM.

## I.

We view the evidence adduced at the suppression hearing and discussed herein in the light most favorable to the Government as the prevailing party in the district court.  *See United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012).  Similarly, all relevant evidence produced at trial and discussed herein is taken in the light most favorable to the jury's verdict.  *See, e.g.*, *United States v. Haines*, 803 F.3d 713, 734–35 (5th Cir. 2015).

### A. Background

McMillon's run-in with the law arises from his travels through Texas with his co-defendant Zeba Williams ("Williams").  The pair first traveled from Houston to San Antonio in a rental car "to do a construction job."  Once in San Antonio, Williams asked McMillon to accompany him in a tractor-trailer to Laredo to pick up a piece of commercial equipment.  Specifically, McMillon testified that Williams asked him to ride along and "to maybe help . . . drive back."  McMillon did not drive the tractor-trailer at any point on the way to Laredo but "guessed" that he would have driven on the way back.

At approximately 4:14:25 a.m. on June 12, 2014, McMillon and Williams arrived in the tractor-trailer at an immigration checkpoint near Freer, Texas. Williams was driving and McMillon was in the passenger seat. As the tractor-trailer entered the checkpoint's primary inspection lane, Border Patrol Agent Luis Pena ("Agent Pena") approached the driver-side door and Border Patrol Agent Manuel Hernandez ("Agent Hernandez") prepared to have his canine, Aroxa, perform a sniff of the tractor-trailer's exterior.  Agent Pena identified himself and asked Williams if he minded opening the door so that they could

hear each other over the engine noise. Williams obliged, and at approximately 4:14:35 a.m., Agent Pena climbed onto the steps of the tractor below the driver's door, placing him at eye level with Williams.

Agent Pena began to question Williams and McMillon as Agent Hernandez was "working his dog." Agent Pena asked the pair if they were United States citizens, and each confirmed that they were. Agent Pena then questioned the pair about their travel plans. At approximately 4:15:07 a.m., as Williams responded to the travel question, Agent Hernandez told Agent Pena to "check the back." Agent Pena understood this to mean that Aroxa had alerted to the presence of contraband in the tractor.

As a courtesy, Agent Pena asked Williams for consent to search the tractor's sleeper area, and Williams obliged. From where he was standing on the tractor's exterior steps, Agent Pena peeked into the tractor's rear sleeper area and saw a fold-up bed cracked open at an odd angle. He asked McMillon to pull the bed down; McMillon got up from his seat and attempted to do so, but stated that the bed was stuck. Agent Pena then entered the tractor and attempted to lower the bed himself, at which time he saw a person's face hidden between the bed and the tractor's wall. At approximately 4:16:09 a.m., Agent Pena exited the tractor and informed Agent Hernandez that "it was going to be positive for aliens [sic] smuggling."

The agents placed Williams and McMillon under arrest. During a subsequent search, agents discovered a total of ten undocumented aliens hidden in the tractor's closets and beds.

### B. Proceedings Below

On July 8, 2014, McMillon and Williams were charged by indictment with one count of conspiracy to transport aliens within the United States for commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I); and two substantive counts of transporting aliens

within the United States for commercial advantage or private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II). Counts Two and Three specifically alleged that McMillon had transported aliens Ramon De La Cruz ("De La Cruz") and Jorge Miguel Hernandez-Gomez ("Hernandez-Gomez")—both of whom were discovered hidden in the tractor's sleeper area—within the United States.

Prior to trial, McMillon moved to suppress all evidence seized from the checkpoint stop, challenging both the duration of the stop and the ensuing search of the tractor. After a two-day suppression hearing, the district court denied the motion, concluding that neither the duration of the stop nor the search of the tractor violated McMillon's Fourth Amendment rights.

Shortly thereafter, McMillon filed a motion to dismiss the indictment on speedy trial grounds, arguing that 104 non-excludable days had elapsed since the date of his indictment. The district court also denied that motion, reasoning that less than seventy non-excludable days had elapsed since McMillon's indictment.

On January 20, 2015, a one-day jury trial commenced, at which the Government proffered testimony from, *inter alia*, Agent Pena, Agent Hernandez, De La Cruz, and Hernandez-Gomez. At the close of the Government's case-in-chief and at the close of evidence, McMillon moved for a Rule 29 judgment of acquittal on each offense alleged in the indictment. The court denied the motion on both occasions. After approximately ninety minutes of deliberations, the jury convicted McMillon of all three offenses and entered special findings that McMillon had committed each offense "for the purpose of commercial advantage or private financial gain." As to the two substantive transportation counts, the jury also entered special findings that McMillon had acted as a principal rather than as an aider-and-abettor.

No. 15-40927

The case proceeded to sentencing. Based on a total offense level of 15 and a criminal history category of VI, McMillon's Presentence Investigation Report ("PSR") calculated a Guidelines-sentencing range of 41 to 51 months' imprisonment. McMillon objected and requested a two-point mitigated role adjustment to his offense level pursuant to U.S.S.G. § 3B1.2. The district court denied McMillon's request and sentenced him to 41 months' imprisonment on each offense, to run concurrently.

McMillon timely appealed.

## DISCUSSION

McMillon raises a host of issues on appeal. He first challenges the district court's denial of his motion to suppress evidence seized from the checkpoint stop. He next asserts that the court erred in denying his motion to dismiss the indictment on speedy trial grounds. Finally, he challenges the sufficiency of the evidence on each of his convictions as well as the district court's denial of a mitigating role adjustment at sentencing. We address each issue in turn.

### I.  Motion to Suppress

McMillon challenges the district court's denial of his motion to suppress, arguing that both the duration of the checkpoint stop and the ensuing search of the tractor were impermissible. This challenge raises a number of discrete sub-issues as discussed herein.

### A.

McMillon first argues that Agent Pena's immigration questions unlawfully extended the duration of the checkpoint stop. We disagree.

### 1.

The Fourth Amendment's reasonableness requirement applies equally to checkpoint stops. *See United States v. Machuca-Barrera*, 261 F.3d 425, 433 (5th Cir. 2001). However, the Supreme Court has recognized the

5

constitutionality of "suspicionless," routine vehicle stops at immigration checkpoints for the limited purpose of ascertaining occupants' citizenship. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 566 (1976); *see also Machuca-Barrera*, 261 F.3d at 433. We have thus held that the permissible duration of such a stop is "the time reasonably necessary to determine the citizenship status of the persons stopped," which would include, for example, "the time necessary to ascertain the number and identity of the occupants of the vehicle, inquire about citizenship status, request identification or other proof of citizenship, and request consent to extend the detention." *Machuca-Barrera*, 261 F.3d at 433. We avoid scrutinizing the particular questions a Border Patrol agent asks during this brief period of time "as long as in sum they generally relate to determining citizenship status." *Id.* Instead, we ask only whether the duration of the stop was objectively reasonable. *See, e.g., United States v. Jaime*, 473 F.3d 178, 183–88 & n.9 (5th Cir. 2006); *Machuca-Barrera*, 261 F.3d at 433–34 & n.26.

If an agent requests consent to extend the duration of a checkpoint stop, or if probable cause arises, then the stop's countable duration is measured only up until the time of consent or probable cause. *See Machuca-Barrera*, 261 F.3d at 434 ("Of course, a Border Patrol agent may extend a stop based upon sufficient individualized suspicion. For extended detentions or for searches, *Martinez-Fuerte* requires consent or probable cause." (citing *Martinez-Fuerte*, 428 U.S. at 567)). Absent consent or probable cause, "when officers detain travelers after the legitimate justification for a stop has ended, the continued detention is unreasonable." *Rynearson v. United States*, 601 F. App'x 302, 305 (5th Cir. 2015) (per curiam) (quoting *United States v. Portillo-Aguirre*, 311 F.3d 647, 654 (5th Cir. 2002)), *cert. denied*, 136 S. Ct. 1448 (2016).

In reviewing the district court's denial of a motion to suppress, we review the court's factual findings (including credibility choices) for clear error and

legal conclusions *de novo*. *See Cavazos*, 668 F.3d at 193; *see also United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). As mentioned *supra*, we view the evidence in favor of the Government as the prevailing party at the suppression hearing. *See Cavazos*, 668 F.3d at 193.

**2.**

In light of these principles, it is clear that Agent Pena did not extend the checkpoint stop beyond its permissible duration. The district court's factual findings, which are amply supported by the suppression testimony and thus not clearly erroneous, indicate that the countable duration of the stop—*i.e.*, the time just before Agent Pena made contact with Williams and McMillon at approximately 4:14:35 a.m. until Williams consented to a search at approximately 4:15:07 a.m.—lasted about thirty or forty seconds. *See Machuca-Barrera*, 261 F.3d at 435 ("We note initially that our inquiry considers only [Agent's] questioning of [Defendant] up to the point at which [Defendant] consented to a search of his car. After [Defendant] consented to a search, [Agent] needed no justification to prolong the encounter."). During this time, citizenship and travel plans questions were asked and answered, and Agent Pena requested and received consent to a search. A checkpoint stop lasting approximately thirty to forty seconds to allow border patrol agents to ask citizenship and travel questions and to request consent for a search is of a sufficiently limited duration under our precedent. *See, e.g.*, *Machuca-Barrera*, 261 F.3d at 429, 435 (approving a checkpoint stop lasting "no more than a couple of minutes" during which Border Patrol agents questioned occupants as to citizenship and travel plans and requested consent for a search); *see also United States v. Hinojosa-Echavarria*, 250 F. App'x 109, 113 (5th Cir. 2007) (per curiam) (holding that a stop "last[ing] no longer than one to one and one

half minutes" was "within the time approved in *Machuca-Barrera*" and thus "did not exceed the permissible duration of an immigration stop"); *Jaime*, 473 F.3d at 186 (citing, *inter alia*, *Machuca-Barrera* and holding constitutional a checkpoint stop that lasted "clearly less than half a minute").

Citing our decision in *Portillo-Aguirre*, McMillon argues that the permissible length of the checkpoint stop ended once Agent Pena was subjectively satisfied that Williams and McMillon were United States citizens, *i.e.*, after Agent Pena inquired about the pairs' citizenship but before Agent Pena inquired about the pairs' travel plans. *See* 311 F.3d at 656 (distinguishing *Machuca-Barrera* and holding a checkpoint stop unconstitutional where a Border Patrol Agent "had completed his inspection before he turned his attention to drug interdiction," which "extended the stop for an additional three to five minutes"). However, notwithstanding the different factual scenarios between *Portillo-Aguirre* and this case, we have explicitly rejected the legal argument that *Portillo-Aguirre* created a "subjective motivation test" that supplanted the objective duration test articulated in *Machuca-Barrera*. *See Jaime*, 473 F.3d at 180, 185–88 (reading *Machuca-Barrera* as holding "that so long as the primary programmatic purpose of the checkpoint was the detection of illegal immigrants, the permissible duration of a suspicionless detention there would be determined by objective factors, *not* by the subjective motivation or state of mind of the specific individual officers conducting the stop and related examination or questioning on the particular occasion at issue"). Rather, as discussed *supra*, *Machuca-Barrera* dictates that we ask only whether the duration of the stop was objectively reasonable. *See id.* (discussing *Machuca-Barrera*, 261 F.3d at 433–34). Because thirty to forty seconds was an objectively reasonable duration, Agent Pena's questions did not impermissibly extend the stop.

No. 15-40927

## B.

McMillon next challenges the ensuing search of the tractor that led to the discovery of the aliens, asserting three reasons why Williams' consent was insufficient to justify the search: (1) Agent Pena had already prolonged the checkpoint stop beyond a permissible duration before Williams consented; (2) the video of the checkpoint stop played at the suppression hearing shows that Agent Pena initiated the search before Williams consented; and (3) Agent Pena's actions rendered Williams' consent involuntary.

### 1.

Before addressing McMillon's arguments, we must consider a threshold question: whether McMillon, as a mere passenger in the tractor, has Fourth Amendment standing to challenge its search.    We have consistently "recognized that 'passengers who assert neither a property nor a possessory interest in the automobile that was searched . . . have no legitimate expectation of privacy entitling them to the protection of the Fourth Amendment." *United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014) (alterations omitted) (quoting *United States v. Greer*, 939 F.2d 1076, 1093 (5th Cir. 1991)). McMillon argues that his agreement to help Williams drive the tractor-trailer "with a commercial purpose in mind" gave him a possessory interest in the tractor-trailer sufficient to confer standing.   We need not reach this novel argument.   Even assuming *arguendo* that McMillon has standing, each of his challenges to the search clearly fail.

### 2.

McMillon's first argument that Williams' consent was invalid because Agent Pena prolonged the checkpoint stop fails for the reasons discussed *supra*.

McMillon's second argument that Agent Pena began the search before Williams consented fails in light of the district court's factual findings and our clear error standard of review.  *See United States v. Tedford,* 875 F.2d 446, 451

(5th Cir. 1989) ("A trial court's finding of consent will not be overturned unless clearly erroneous."). McMillon renews the same argument that he made in the district court, *i.e.*, that a "white shadow" in the tractor's windshield at approximately 4:14:48 a.m. on the checkpoint video shows McMillon moving from the passenger seat to the sleeper area of the tractor at Agent Pena's request, which means that Agent Pena must have initiated the search before Agent Hernandez told him "to check the back" at approximately 4:15:07 a.m. and Williams consented shortly thereafter. The district court, after hearing conflicting testimony and viewing the checkpoint video numerous times at the suppression hearing, found that both Agent Pena and Agent Hernandez had credibly testified that Williams consented before the search occurred and that the "grainy" checkpoint video lent no clear answer either way. Our review of the checkpoint video is consistent with the district court's finding—it is indeed grainy and unclear; it has no sound; and, although something certainly flashes in the tractor's windshield between 4:14:48 a.m. and 4:14:50 a.m., we cannot say with certainty whether that flash was McMillon moving at Agent Pena's request or some other reflection. Accordingly, viewing the evidence in the light most favorable to the Government and giving due deference to the district court's credibility determinations, we conclude that the district court's crediting of the Agents' testimony as opposed to an unclear video was not clearly erroneous. *See, e.g.*, *United States v. Solis*, 299 F.3d 420, 435–46 (5th Cir. 2002) (noting that a district court's credibility choices as to the voluntariness of consent are reviewed for clear error and that this standard is "particularly strong" where findings are based on the "oral testimony at a suppression hearing").

McMillon's third argument that Agent Pena's actions rendered Williams' consent involuntary similarly fails. Consent to a search must be knowing and voluntary "under the totality of the circumstances." *Tedford*, 875 F.2d at 451–

52 (citation and internal quotation marks omitted).  We have articulated six primary factors to be considered in determining the voluntariness of consent: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found."  *Id.* at 451.  No single factor is dispositive.  *See id.* at 451–52.

Applying the *Tedford* factors, the district court found, *inter alia*, that Williams was stopped at the time he consented but was not physically restrained or coerced;[1] Williams was fully cooperative with Agent Pena during the encounter; and Williams "appeared quite articulate on the stand," which "strongly indicate[d] that he possessed sufficient intelligence to consent voluntarily."  Viewing these findings with due regard to the district court's opportunity to judge Williams' credibility at the suppression hearing, we conclude that the district court's finding that Williams voluntarily consented to the search was not clearly erroneous.  *See Solis*, 299 F.3d at 436.

## C.

Having considered McMillon's arguments, we conclude that the checkpoint stop and ensuing search of the tractor did not violate McMillon's Fourth Amendment rights.  Accordingly, we affirm the district court's denial of his motion to suppress.

---

[1] McMillon emphasizes that "Agent Pena required Williams to open the door from the inception and he secured a position on the steps next to Williams . . . [as] a show of authority that assured Williams and McMillon could not leave until Agent Pena closed the door."  McMillon's attack on the voluntariness of Williams' consent is belied by Williams' own suppression testimony that Agent Pena *asked*—not *ordered*—him to open the door and that he knew he could refuse to do so if he wished.

## II. Motion to Dismiss

McMillon next challenges the district court's denial of his motion to dismiss the indictment on speedy trial grounds, arguing that more than seventy days elapsed between his indictment and trial such that mandatory dismissal was required.  We disagree.

### A.

"The Speedy Trial Act is designed to ensure a federal defendant's Sixth Amendment right to a speedy trial . . . ."  *United States v. Johnson*, 29 F.3d 940, 942 (5th Cir. 1994).  To achieve this end, "the Act requires that a defendant be tried within seventy non-excludable days of indictment.  If more than seventy non-excludable days pass between the indictment and the trial, the 'indictment shall be dismissed on motion of the defendant.'"  *Id.* (quoting 18 U.S.C. § 3162(a)(2)).  Recognizing that there can be valid reasons to delay a criminal trial, "the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start."  *Zedner v. United States*, 547 U.S. 489, 497 (2006).  Several of these exclusions are at play in this appeal.

First, the Act excludes periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(D).  We have held that this particular "exclusion implicitly extends to 'that time after a hearing needed to allow the trial court to assemble all papers reasonably necessary to dispose of the motion, *e.g.*, the submission of post-hearing briefs.'"  *United States v. Harris*, 566 F.3d 422, 429 (5th Cir. 2009) (quoting *Johnson*, 29 F.3d at 943).  Second, once such papers are assembled, "the court has taken the motion 'under advisement' and thus has thirty excludable days in which to rule under another one of the statutory exclusions."  *Id.* (citing 18 U.S.C. § 3161(h)(1)(H)).  "The clock begins to tick again at the end of that thirty-day

No. 15-40927

period, regardless of whether the court has ruled on the motion." *Id.* (quoting *United States v. Stephens*, 489 F.3d 647, 656 (5th Cir. 2007)).

Third, the Act excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Act explicitly requires that a district court make such "ends-of-justice" findings on the record. *See id.* § 3161(h)(7)(A) ("No such period of delay . . . shall be exclud[ed] . . . unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.").

In reviewing a district court's speedy trial determinations, we review the court's legal conclusions *de novo* and factual findings for clear error. *See, e.g.*, *United States v. Tannehill*, 49 F.3d 1049, 1051 (5th Cir. 1995).

**B.**

Applying these statutory exceptions and our case law, we hold that the district court correctly concluded that less than seventy non-excludable days elapsed between McMillon's indictment and trial. McMillon's speedy trial clock began on July 8, 2014, the date of his indictment. Seventeen non-excludable days then elapsed until McMillon filed his first motion to continue on July 25, which tolled the speedy trial clock pursuant to 18 U.S.C. § 3161(h)(1)(D). On July 28, the court granted McMillon's motion and extended the time for pretrial motions until August 11—the speedy trial clock remained tolled during this continuance period pursuant to § 3161(h)(7)(A). On August 11, McMillon filed a second motion to continue, which again tolled the clock pursuant to § 3161(h)(1)(D). On August 12, the court granted McMillon's second motion and extended the time for pretrial motions until

13

August 18—the speedy trial clock remained tolled during this continuance period pursuant to § 3161(h)(7)(A).

On August 18, events began transpiring that kept McMillon's speedy trial clock tolled for a substantial period of time. That day, McMillon filed a motion to suppress and a motion for discovery of, *inter alia*, canine records. On September 17, he filed amended versions of the same motions. On September 22, the court held a hearing on the motions, at which McMillon challenged the checkpoint stop and search and argued that the canine records were necessary to cross-examine Agents Pena and Hernandez regarding suppression. On September 24, the court *sua sponte* reconvened the suppression hearing to explore further McMillon's arguments and allowed the parties to file post-hearing briefs. On October 15, the court entered a discovery order, requiring the Government to produce the canine records for *in camera* inspection by October 22. Though the Government produced the records on the deadline, the court was unable to "fully read and understand" them; thus, the court requested additional information on December 11, which the Government provided on December 17. McMillon's speedy trial clock remained tolled during this entire period pursuant to § 3161(h)(1)(D), as per his request, the court gathered the papers necessary to gauge the checkpoint stop and the search so as to then adjudicate the suppression motion. *See Harris*, 566 F.3d at 429 (noting that § 3161(h)(1)(D)'s exclusion period "implicitly extends to that time after a hearing needed to allow the trial court to assemble all papers reasonably necessary to dispose of the motion" (citation and internal quotation marks omitted)).

Once the court received the December 17 submissions, the suppression matter was considered "under advisement," and the thirty-day exclusion period in § 3161(h)(1)(H) began to run. This excluded the days between December 17, 2014, and January 5, 2015, the date on which the court denied

No. 15-40927

McMillon's motion to suppress. Six non-excludable days then elapsed until January 12, the date on which McMillon filed his motion to dismiss the indictment. This again tolled the speedy trial clock pursuant to § 3161(h)(1)(D).

On January 20, the court held a hearing on the motion to dismiss, at which it clarified why it had granted the earlier continuances:

> [B]efore the Court hears argument on the Motion to Dismiss, I have to address some prior continuances that this Court granted.
>
> The first continuance was granted on July 28th . . . then a subsequent one on August 12th. They are noted on the record as Docket entries Numbers 35 . . . [and] 39 . . . . All of these different orders that the Court entered were motions to continue that were requested by the Defendants, whereby the Defendants requested . . . some more time to file pretrial motions in this case.
>
> The Court signed all of these proposed orders in each instance; however, I did not articulate specific findings regarding whether the ends of justice would have been met by granting those continuances that were requested by the Defendants. But the Court is going to make it abundantly clear, and I am clarifying that after I consider all the factors that are set forth in 18 USC 3161(h)(7)B [sic], each one of these continuances . . . was granted because the Court found that although this case is not unusual or complex that it was unreasonable to expect adequate preparation in the time allotted for by the Speedy Trial Act, the failure to grant those continuances would have affected the Defendant's ability to adequately prepare for this case and would have denied all three of these Defendants reasonable time necessary for effective preparation.
>
> In each instance, counsel for the respective Defendants articulated reasons why despite their respective due diligence they were unable to adequately prepare to file pretrial motions by the deadlines the Court had set. And the Court accepted those reasons that were given by the Defendants in whole. Thus the Court found that the ends of justice served by continuing the pretrial motions deadline for the specified period outweighed the best interest of the public and Defendants in a speedy trial in each case.

After hearing arguments from the parties, the court orally denied the motion to dismiss, and McMillon's trial began later the same day.

15

No. 15-40927

Although the computation is convoluted, we are convinced that only twenty-three non-excludable days elapsed from the date on which McMillon was indicted to the date on which his trial began—seventeen non-excludable days from indictment to first continuance motion and six additional non-excludable days from the denial of the motion to suppress to the filing of the motion to dismiss. Twenty-three non-excludable days between indictment and trial does not violate the Speedy Trial Act. *See Johnson*, 29 F.3d at 942.

McMillon makes two arguments to the contrary. He first argues that periods of delay related to his continuance motions cannot be excluded because the district court granted those motions without contemporaneously entering ends-of-justice findings. We have rejected a reading of § 3161(h)(7)(A) as requiring contemporaneous ends-of-justice findings. *See United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002) (rejecting the argument that the Speedy Trial Act requires contemporaneous ends-of-justice findings). Rather, the Act "merely requires that a district court enter on the record, at some point (presumably prior to trial), the necessary findings to support an ends-of-justice continuance;" that the findings "indicate when the motion was granted;" and "that the reasons stated be and can be fairly understood as being those that actually motivated the court at the time it granted the continuance." *Bieganowski*, 313 F.3d at 283. Here, the court's oral explanation at the January 20 hearing satisfied these conditions—the court entered the necessary ends-of-justice findings before denying McMillon's motion to dismiss and before trial, identified by date and docket number the motions granted, and fairly explained the factors that motivated the court when it granted the motions. Under *Bieganowski*, this is all that the Speedy Trial Act requires. *See* 313 F.3d at 283. Accordingly, McMillon's first argument fails.

Second, McMillon argues that delay attributable to certain matters that occurred "off the record"—*i.e.*, events that indisputably occurred but that were

16

not formally noted on the district court's docket—cannot be excluded. While not completely clear, he appears to argue that § 3161(h)(1)(H)'s 30-day advisement period should have started on October 22, 2014—the date on which the court received the first set of canine records for *in camera* inspection pursuant to its October 15 docket order—rather than December 17—the date on which the court received the second set of canine submissions for *in camera* inspection without memorializing its receipt or request with a formal docket entry.

McMillon's argument is unconvincing and without merit. McMillon directs our attention to no authority suggesting that we must exclude matters that occurred "off the record" for speedy trial purposes. Indeed, under the circumstances here, it would make little sense for such events—which indisputably occurred at McMillon's request and solely for his benefit—to be ignored merely because the district court failed to make a formal notation on the docket.

However, even generously assuming *arguendo* that we should exclude the "off the record" period identified by McMillon, there would still be no speedy trial violation. Assuming that the 30-day advisement period began upon the court's October 22 receipt of the first set of canine records, then it would have ended on November 20. Forty-five non-excludable days then elapsed between November 20 and January 5, the date on which the court ruled on McMillon's motion to suppress. Added to the seventeen non-excludable days and six non-excludable days discussed *supra*, this means that only sixty-eight non-excludable days would have elapsed. Because sixty-eight non-excludable days between indictment and trial complies with the Speedy Trial Act, *see Johnson*, 29 F.3d at 942, McMillon's argument still fails. Accordingly, we affirm the district court's denial of McMillon's motion to dismiss.

No. 15-40927

### III. Sufficiency Challenges

Aside from the denial of his pretrial motions, McMillon also challenges the sufficiency of the evidence on all three of his convictions. Because he timely moved for acquittal as to each conviction, we review McMillon's sufficiency challenges *de novo*, and ask "whether, viewing all the evidence in the light most favorable to the verdict, a rational jury could have found that the evidence established the elements of the offense[s] beyond a reasonable doubt." *United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009) (citation and internal quotation marks omitted). We draw all reasonable inferences and make all credibility determinations "in the light most favorable to the verdict." *Id.* (citation and quotation marks omitted).

#### 1.

McMillon first argues that the trial evidence was insufficient to show that he conspired to transport aliens within the United States for commercial advantage or private financial gain as alleged in Count One of the indictment. To prove the conspiracy conviction, "the Government had to establish beyond a reasonable doubt that there was an agreement between [McMillon] and at least one other person to violate the law by transporting illegal aliens within the United States and that [McMillon] had knowledge of the agreement and voluntarily joined in it." *United States v. Espinoza-Diaz*, 582 F. App'x 398, 399 (5th Cir. 2014) (per curiam) (citing, *inter alia*, *United States v. Avila-Dominguez*, 610 F.2d 1266, 1271 (5th Cir. 1980)), *cert. denied*, 135 S. Ct. 1493 (2015). "Association or presence can be sufficient to prove knowing participation in the agreement if combined with other supporting circumstantial evidence." *United States v. Martinez*, 190 F.3d 673, 676 (5th Cir. 1999). The agreement itself "does not have to be explicit or formal; a tacit agreement is sufficient." *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013) (citation and internal quotation marks omitted).

18

At trial, De La Cruz and Hernandez-Gomez—two of the unlawful aliens discovered hidden in the tractor—testified that they entered the United States with smugglers before they were eventually taken to an empty parking lot where they were picked up by a tractor-trailer.  Both testified that, when the tractor-trailer arrived, a man wearing a blinking cellular Bluetooth Device and white clothing motioned for them to hide in the tractor, and both identified McMillon (sitting at the defense table) as this person.  To complement the aliens' testimony and in-court identification, the Government showed the jury a photograph of McMillon wearing white on the night of the incident and called Agent Pena and Agent Hernandez to narrate the checkpoint stop for the jury. Viewed in the light most favorable to the verdict, this evidence suggested that McMillon rode with Williams in a tractor-trailer, stopped at an empty parking lot where aliens were waiting, and motioned for the aliens to hide in the tractor before attempting to transport them through an immigration checkpoint.  A reasonable jury could have relied upon this evidence to find that McMillon agreed with Williams to transport aliens and that McMillon had knowledge of this arrangement and voluntarily participated in it.  *See, e.g.*, *Espinoza-Diaz*, 582 F. App'x at 399.

McMillon argues that even if there was evidence of an agreement with Williams, there was no evidence that the pair agreed to transport aliens for commercial advantage or private financial gain.  This argument fails.  To sustain the conspiracy conviction, the Government was not required to "prove that the offense was committed for commercial advantage or private financial gain." *See United States v. Hill*, 454 F. App'x 330, 333 (5th Cir. 2011) (rejecting the argument that a § 1324 jury instruction was flawed because it omitted a pecuniary purpose element).  Rather, the language of the statute indicates that pecuniary purpose is a finding that increases the offense's statutory maximum. *See id.*; *compare* 8 U.S.C. § 1324(a)(1)(B)(ii) (providing a statutory maximum

of five years' imprisonment for the offense of conspiracy to transport aliens), *with id.* § 1324(a)(1)(B)(i) (increasing the statutory maximum to ten years' imprisonment if the offense "was done for the purpose of commercial advantage or private financial gain"). And, here, consistent with *Apprendi v. New Jersey*, the pecuniary-purpose enhancement was charged in the indictment, put to and found by the jury, and amply supported by the trial evidence. *See* 530 U.S. 466, 476 (2000) ("[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."). Both De La Cruz and Hernandez-Gomez testified that they had arranged to pay thousands of dollars to be smuggled into the United States, and Border Patrol Agent Eric Camacho testified as to how aliens or their families commonly pay smugglers indirectly. *See United States v. Allende-Garcia*, 407 F. App'x 829, 833–34 (5th Cir. 2011) (collecting cases from this circuit and others for the proposition that "financial-purpose" evidence "was sufficient when there was evidence that the defendant was working with a smuggling network and that someone in the network had received or would receive money"). This was sufficient to support the jury's pecuniary purpose special finding, even though, contrary to McMillon's argument, pecuniary purpose is not an essential element of his conspiracy conviction. *See Hill*, 454 F. App'x at 333.

Finally, McMillon points to inconsistencies in the Bluetooth evidence identifying him at trial. As McMillon identifies, there was indeed arguably conflicting evidence about the Bluetooth at trial—De La Cruz and Hernandez-Gomez both testified that, at the parking lot, a person wearing a Bluetooth instructed them to hide in the tractor, and identified McMillon as that person; yet, Agent Pena and Agent Camacho both testified that the Bluetooth was seized from Williams, not McMillon, after the checkpoint stop. However, McMillon pressed these inconsistencies (albeit, to no avail) to the jury in cross-

examinations and in closing argument.  And, the aliens' testimony is not factually impossible; rather, it is entirely possible that McMillon was wearing the Bluetooth when the aliens were picked up and that Williams was wearing it some period of time later during the checkpoint stop.  The jury was free to choose this reasonable construction of the evidence and to gauge the credibility of the testifying witnesses in doing so.  It is not our role to second-guess the jury's credibility determinations on appeal.  *See, e.g., United States v. Rubio-Mendoza*, No. 14-41270, ___ F. App'x ___, ___, 2016 WL 825476, at *1 (5th Cir. Mar. 2, 2016) ("[J]urors are free to choose among reasonable constructions of the evidence, and retain the sole authority . . . to evaluate the credibility of the witnesses.  In other words, for the latter, it is not our court's role . . . to second-guess the determinations of the jury as to the credibility of the evidence." (internal alterations and citations omitted)).  Accordingly, we affirm McMillon's conspiracy conviction.

## 2.

McMillon also argues that the trial evidence was insufficient to support his convictions for the substantive alien transportation offenses alleged in Counts Two and Three of the indictment.  To prove the transportation convictions, the Government was required to show "that '(1) an alien entered or remained in the United States in violation of the law, (2) the defendant transported the alien within the United States with intent to further the alien's unlawful presence, and (3) the defendant knew or recklessly disregarded the fact that the alien was in the country in violation of the law.'" *United States v. Battle*, 368 F. App'x 560, 562 (5th Cir. 2010) (alterations omitted) (quoting *United States v. Nolasco-Rosas*, 286 F.3d 762, 765 (5th Cir. 2002)).  As recounted *supra*, the jury heard ample evidence that De La Cruz and Hernandez-Gomez unlawfully entered the United States and that McMillon recklessly disregarded their citizenship by picking them up in an empty

parking lot and instructing them to hide in a tractor before attempting to transport them through an immigration checkpoint. Also as discussed *supra*, McMillon's pecuniary purpose argument lacks merit. We thus affirm McMillon's transportation convictions.

## IV. Sentencing

McMillon's final argument is that the district court erred in denying his request for a mitigated role adjustment pursuant to U.S.S.G. § 3B1.2. We review the district court's denial of a § 3B1.2 adjustment for clear error. *See, e.g., United States v. Alaniz*, 726 F.3d 586, 626 (5th Cir. 2013).

Generally, U.S.S.G. § 3B1.2 provides for varying reductions to a defendant's offense level if the defendant's participation in an offense was minimal, minor, or somewhere in between. We have noted that such adjustments are "generally appropriate only if a defendant is substantially less culpable than the average participant." *United States v. Virgen-Moreno*, 265 F.3d 276, 296 (5th Cir. 2001) (quoting *United States v. Flucas*, 99 F.3d 177, 180 (5th Cir. 1996)). The defendant bears the burden of establishing entitlement to a § 3B1.2 adjustment. *See United States v. Garcia*, 242 F.3d 593, 597 (5th Cir. 2001).

At sentencing, the district court clearly articulated that it was denying McMillon's § 3B1.2 request because each of his minor-role arguments were contradicted by Williams' live sentencing testimony that he did not recruit McMillon to commit the offenses and that, instead, the pair entered a joint partnership to smuggle aliens. This explanation alone was sufficient for the court to find that McMillon's involvement in the offenses was that of an average participant and that McMillon was not any less culpable than Williams. *See Garcia*, 242 F.3d at 598 ("[S]ection 3B1.2 asks whether a defendant's involvement is comparable to that of an 'average participant.'" (citation omitted)). In his brief, McMillon makes no attempt to address

Williams' testimony or the district court's finding in this regard; instead, he merely reiterates, without citing any sentencing or trial evidence, that he was merely a passenger in the tractor; that he did not make any arrangements in relation to transporting the aliens; and that he possessed no managerial responsibilities.   We hold that the district court's reliance on Williams' testimony as opposed to McMillon's unsupported arguments was not clearly erroneous. *See Alaniz*, 726 F.3d at 626.  Accordingly, we affirm the district court's denial of the § 3B1.2 adjustment.

## V. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of McMillon's motion to suppress; AFFIRM the court's denial of McMillon's motion to dismiss; AFFIRM each of McMillon's convictions; and AFFIRM the district court's denial of a § 3B1.2 adjustment at sentencing.